DECISION
Tarris Kirkland (born in 1985), Tender Smith (born in 1988), Tekeya Smith (born in 1994), and Tamyrin Smith (born in 1997) are the children of Pamela Smith. Sally Smith is the children's maternal grandmother. Appellant Alonzo Martin is the father of Tender, Tekeya, and Tamyrin. Tarris's father is deceased.
For many years, Pamela has had substance-abuse problems. Because of these problems, the children were removed from Pamela's care and, over the years, were placed in the custody of others. (Martin and Pamela were not married and did not live together.) In this appeal, Martin challenges a juvenile-court decision granting long-term foster care of Tarris and Tender to the Hamilton County Department of Human Services (HCDHS), and granting permanent custody of Tekeya and Tamyrin to HCDHS. Martin raises four assignments of error. We overrule all four and affirm.
 I. Removal from Home
In the first assignment, Martin asserts that the court erred in concluding that HCDHS had made reasonable efforts to prevent the removal of the children from the home. He does not argue that the children should have been returned to Pamela. Rather, he argues that either he or Sally Smith should have been afforded the services necessary to take custody of the children. He relies on R.C. 2151.419, which provides that a juvenile court, before removing a child from his or her home, must determine whether the children-services agency has made reasonable efforts to prevent the removal of the child from the home or has made it possible for the child to return home.
Martin first argues that HCDHS failed to show that it had made reasonable efforts for him to get custody of the children. (Because Martin is not Tarris's father, we only address this argument for Tender, Tekeya, and Tamyrin.) He claims that this was the result of HCDHS's failure to offer him services to put him in a position for reunification with the children. The juvenile-court magistrate, however, concluded otherwise after several days of hearings. The magistrate found, "Father has a history of substance abuse and domestic violence convictions. Father did not request for his children to be returned to him. Father has stated that he is unable to care for the children and has requested that the children be returned to [Pamela] or [Sally]. Father was offered services but he did not complete the substance abuse assessment when set up by [HCDHS]. Father has not provided support or established much of a relationship with the children."
We conclude that the record supports the magistrate's findings and conclusions, which were adopted by the juvenile court. The record reveals that an HCDHS caseworker attempted to make contact with Martin on various occasions, but was unsuccessful. In 1998, when a caseworker was able to contact Martin regarding Tamyrin, Martin stated that he was not in a position to take Tamyrin and that he did not have any relatives who were available either. Later in 1998, the caseworker attempted to have Martin get a drug screen, which, when completed, would have enabled Martin to have access to other HCDHS services. But Martin declined, stating that he was on drugs. Although Martin later indicated that he was interested in getting a drug evaluation, he failed to follow through on the necessary calls to have it done. Also, the record shows that HCDHS offered visits for Martin with the children, but that Martin's attendance was sporadic. Under these circumstances, we conclude that HCDHS made reasonable efforts for Martin to get custody of the children. We cannot conclude that the court erred in its determination.
Martin also argues that HCDHS failed to show that it had made reasonable efforts for Sally to get custody of the children. But the record reveals that HCDHS did offer various services to Sally. These services included a drug assessment, a psychological evaluation, visitation, and participation in therapy with the children. Sally participated in these services; nevertheless, the court concluded that she would not be an appropriate caregiver for the children. The magistrate stated, "Neither [HCDHS] nor the Guardian ad litem found [Sally] to be an appropriate caretaker for the following reasons: 1) [Pamela] previously reported that [Sally] abused alcohol; 2) the children have lived with [Sally] in the past and Tarris has become the caregiver; 3) [Pamela] reported that [Sally] was her last resort; 4) [Sally] has health complications and due to her age would have difficulty adequately caring for the children and 5) neither [HCDHS] nor the [guardian ad litem] have observed a bonded relationship between [Sally] and the children." We conclude that the record supports the magistrate's findings, and that the court did not err in determining that Sally would not be an appropriate caregiver despite the reasonable efforts by HCDHS. We overrule Martin's first assignment.
 II. Hearsay
In his second assignment, Martin contends that the court erred in allowing various hearsay statements pertaining to Tamyrin's permanent-commitment hearing. Martin argues that, under Juv.R. 34(I), the hearsay statements were inadmissible. Juv.R. 34(I) states, "The Rules of Evidence shall apply in hearings on motions for permanent custody." HCDHS argues that Martin's argument is misplaced because the hearing for Tamyrin was held on the basis of an original complaint for permanent custody, not a "motion" for permanent custody. HCDHS claims that Juv.R. 34(B)(2) applied: "Except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." Because the practical consequence of a complaint for permanent custody is the same as that for a motion for permanent custody, we reject HCDHS's argument. Juv.R. 34(I) applies to all actions for permanent custody.[1]
But we conclude that the admission of the alleged hearsay was not prejudicial. Martin first points to statements regarding Sally made by Kristina Cagle, an HCDHS caseworker. Martin challenges Cagle's testimony that an investigation had revealed that Sally had a record. Also, Martin challenges a statement regarding a drug-abuse assessment that had been done for Sally. We conclude that these statements, which were not objected to at the hearing, were not prejudicial. As explained above, the juvenile court's determination that Sally should not get custody of the children was based on, among other things, its conclusions that Sally's age and health complications would prevent her from being an adequate caregiver. The court's decision was not based on the fact that Sally might have had a criminal record or that a substance-abuse assessment was done for her. Thus, we cannot conclude that the admission of the statements affected the outcome of the hearings.
Second, Martin challenges statements made by Cagle regarding a conversation that Cagle had with the foster parent with whom Tamyrin lived at the time of the hearings. Cagle testified, without objection, that the foster parent had stated that she was interested in adopting Tamyrin. We conclude that this statement was not inadmissible hearsay, because it was not offered for the truth of the matter asserted. It was merely offered to show that Tamyrin had other alternatives than returning to his family. Further, because other parts of the record also showed that Tamyrin had a high likelihood of being adopted, we conclude that the statement was not prejudicial.
Finally, Martin challenges statements by various caseworkers, therapists, and HCDHS family aides, who testified as to what the children had said about their wishes to be adopted. Again, we hold that these statements were not prejudicial. The magistrate's findings and conclusions make it clear that the children's desires were only one factor of many that were taken into account in arriving at the decision in the case. Based on our review of the record, we cannot conclude that the admission of the statements changed the outcome of the case.
We overrule Martin's second assignment. And, contrary to an argument by Martin, we conclude that Tamyrin was not prejudiced by the fact that the evidence for his dispositional hearing was taken at the same time as the evidence for the disposition of the other children. Although the evidence was taken at the same hearing, the record reveals that the magistrate gave due consideration to each child separately.
 III. Felony Conviction of Witness
In Martin's third assignment, he asserts that the court's judgment was against the manifest weight of the evidence. In the fourth assignment, he asserts that the judgment should be reversed because of "prosecutorial misconduct." We treat these assignments together because both focus on the same issue: Martin's lack of knowledge during the hearing that Kristina Cagle, the HCDHS caseworker, was a convicted felon (for theft in office). Martin claims that the failure of HCDHS to disclose this potential impeachment evidence constituted reversible error based on the potential taint of Cagle's testimony. He also claims that a motion for relief from judgment based on the discovery of the evidence should have been granted. We disagree.
The hearings before the magistrate in this case were conducted on several days: September 21, 1998, September 23, 1998, September 25, 1998, November 18, 1998, November 30, 1998, and January 27, 1999. Cagle testified on September 23 and November 18, 1998. She was charged with the theft offense on January 6, 1999, and pleaded guilty on January 22. The dates are important because they show that Cagle's testimony came before she was charged with the offense. Martin suggests that Cagle's testimony for HCDHS might have been given in exchange for a more lenient sentence. But there is no evidence that this was actually the case, or that Cagle's testimony was tainted in any respect. Also, we note that counsel for HCDHS filed an affidavit with the trial court that stated that he had not been aware of Cagle's conviction (which, incidentally, was a matter of public record) until after the hearings had concluded. Under these circumstances, while it is true that Cagle was a convicted felon by the time the hearings had ended, we cannot conclude that there was reversible error. We hold that there was competent, credible evidence to support the court's decision and that the motion for relief from judgment was properly denied.[2] We overrule the third and fourth assignments.
Therefore, the judgment of the juvenile court is affirmed.
Judgment affirmed.
 HILDEBRANDT, P.J., and WINKLER, J., concur.
[1] See In the Matter of Davon B. (May 9, 1997), Lucas App. No. L-96-187, unreported ("Although [Juv.R. 34(I)] refers to "motions" and not to "complaints," we are of the opinion that, in light of the gravity of R.C. 2151.414 permanent custody proceedings, Juv.R. 34(I) applies to any permanent custody hearing.").
[2] See In re Heston (1998), 129 Ohio App.3d 825, 828,719 N.E.2d 93, 95 (manifest-weight standard); State v. Apanovitch
(1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400 ("The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives the defendant of a fair trial.").